IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TODD KLUSMANN,**                                   **Case No.  5:24-CV-1295**

                                **Plaintiff,**

        **-vs-**                                     **JUDGE PAMELA A. BARKER**

**THE AT&T UMBRELLA**
**BENEFIT PLAN NO. 1, et al.,**                **MEMORANDUM OPINION & ORDER**

                **Defendants**

Pending before this Court is the Motion for Discovery of Plaintiff Todd Klusmann ("Plaintiff or "Klusmann") filed on March 31, 2025 ("Plaintiff's Motion").  (Doc. No. 21.)  On April 30, 2025, Defendants AT&T Services, Inc. ("AT&T") and Sedgwick Claims Management Services, Inc. ("Sedgwick") (together, "Defendants") filed a Brief in Opposition to Plaintiff's Motion ("Defendants' Opposition").  (Doc. No. 22.)  On May 12, 2025, Klusmann filed a Reply in Support of Plaintiff's Motion ("Klusmann's Reply").  (Doc. No. 23.)

For the following reasons, Klusmann's Motion is DENIED.  (Doc. No. 21).

## I.      Background

### A.      Factual Allegations

This case concerns Klusmann's allegations that Defendants denied him benefits under AT&T's Long-Term Disability Policy (the "Plan") in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, *et seq*.  (Doc. No. 9 at PageID#s 49-50.)  According to Klusmann, he was injured in 2020 and diagnosed with several medical conditions.  (Doc. No. 21 at

PageID# 108.)[1]  He applied for long-term disability ("LTD") benefits to be paid from the Plan, but on November 2, 2023, Defendants denied him LTD benefits.  (*Id.*)  On April 30, 2024, he appealed his denial.  (*Id.*)  On May 30, 2024, Defendants scheduled Klusmann to undergo a physical examination that would take place on June 26, 2024.  (*Id.*)  On May 31, 2024, Defendants notified Klusmann that "it would take an additional forty-five (45) days to issue a decision because the [physical examination] appointment would occur after the first forty-five (45) day deadline."  (*Id.*)[2]  On June 26, 2024, Dr. Randy P. Plona ("Dr. Plona") performed his independent medical evaluation of Klusmann to provide his opinion on Klusmann's "overall functionality[.]" (*Id.*; Doc. No. 23-1 at PageID# 159.)

On July 8, 2024, Dr. Plona sent his report to Defendants, and on July 15, 2024, they "mailed a proffer notice to [Klusmann's] counsel, provided Dr. Plona's report, and indicated it would issue a decision on or before 9/3/24."  (*Id.* at PageID# 109.)  On July 24, 2024, Klusmann's counsel received Defendants' proffer notice.  (*Id.*) (citing Affidavit of Hollie Zychowski, Doc. No. 23-1 at PageID# 155.)  On July 26, 2024, Klusmann's counsel "responded via facsimile[,] indicating that it was not a proper proffer notice due to lacking all new documentation. *** Counsel proceeded to object to the extended allowance of time it set to issue a final denial and reminded Defendants to adhere to ERISA requirements."  (*Id.*)

---

[1] Neither party has filed a copy of the administrative record with the Court.  Nevertheless, because the parties do not dispute its contents, the Court's analysis presumes that the parties have accurately represented it.

[2] *See Marcin v. Reliance Standard Ins. Co.*, 895 F. Supp. 2d 105, 120 n.5 (D.D.C. 2012) (citing 29 C.F.R. § 2560.503-1(i)(1), (i)(3)(i)) ("ERISA regulations provide that a decision on an appeal must be granted within forty-five days after the appeal is filed, unless an extension is necessary under 'special circumstances,' in which case an additional forty-five days is allowed."); *Hall v. United of Omaha Life Ins. Co.*, 741 F. Supp. 2d 1348, 1356-57 (N.D. Ga. 2010) ("After receipt of an appeal, United again has forty-five days to issue its decision.  It may extend this initial period by forty-five days if it notifies the claimant before the initial period expires and if special circumstances exist that require the extension.").

According to Klusmann, his "administrative remedies had been exhausted after 7/29/24" because that was "ninety (90) days from the 4/30/24 appeal." (*Id.*)  Thus, "[w]ith no decision issued on 7/29/24," on July 30, 2024, Klusmann filed the Complaint and notified Defendants about this lawsuit. (*Id.*)  But on July 31, 2024, Defendants issued their decision, which denied Klusmann's appeal. (*Id.*)  Klusmann's position is that the denial was late and cannot be relied upon by Defendants. (*Id.*)  However, Klusmann also asserts that "the information contained in that denial outlined the evidence used in reaching its determination *** [o]f which included a Transferable Skills Analysis *** which was not provided with the 7/15/24 proffer letter." (*Id.*)

According to Klusmann, his appeal "included an affidavit outlining his ongoing issues, and valid and objective Functional Capacity Evaluation (FCE), dated 2/24/24" that "provided supporting proof that Plaintiff was unable to perform any meaningful work with the significant restrictions found during testing." (*Id.*)  But that "favorable evidence submitted on appeal was never given to Dr. Plona, as they was [sic] excluded from her 'Record Review' list." (*Id.* at PageID#s 109-10.)

### B.    Procedural History

As noted above, on July 30, 2024, Klusmann filed the Complaint in this Court. (Doc. No. 1.) Klusmann asserted one claim (Count I) under ERISA § 502, 28 U.S.C. § 1132(a)(1)(B), against the following Defendants: AT&T Umbrella Benefit Plan No. 1, AT&T Umbrella Benefit Plan No. 3, AT&T Services, Inc., AT&T Integrated Disability Service Center, and Sedgwick Claims Management Services, Inc.[3] (Doc. No. 1.)  Therein, he alleges that "Defendants have wrongfully, and/or arbitrarily and capriciously refused to pay and/or continue Plaintiff's benefits, in violation of the terms of its

---

[3] Klusmann incorrectly adds "the" to each AT&T Defendant in the caption, but correctly refers to them in the body of each pleading. (Doc. No. 1 at PageID#s 1-2; Doc. No. 9 at PageID#s 48-49.)

policy under The Plan, and in violation of 29 U.S.C. § 1132(a) *et seq.*" (*Id.* at PageID# 3.) On October 3, 2024, Klusmann voluntarily dismissed AT&T Umbrella Benefit Plan No. 1 from the action, and that same day, he filed his Amended Complaint which reasserts Count I against only the remaining Defendants: AT&T Umbrella Benefit Plan No. 3, AT&T Services, Inc., AT&T Integrated Disability Service Center, and Sedgwick Claims Management Services, Inc. (Doc. Nos. 8, 9.)

On January 15, 2025, the Court held a Case Management Conference pursuant to Rule 26, after which the Court issued a Case Management Conference Order that set a briefing schedule for the pending Motion as follows:

> 6. The parties **do** intend to file motion(s) seeking leave to conduct discovery. The deadline for the filing of a motion for discovery is March 31, 2025, the deadline for the filing of any opposition to the motion for discovery is April 30, 2025, and the deadline for the filing of a reply in support of any motion for discovery is May 14, 2025.
>
> 7. A status conference will be set after the Court's ruling on the motion(s) for discovery. During that status conference, the Court will set the briefing schedule for merits briefs.

(Doc. No. 19 at PageID# 102) (emphasis in original). On March 31, 2025, Klusmann filed his Motion. (Doc. No. 21.) Therein, he "moves this Court for approval to proceed with discovery" using six (6) Interrogatories, two (2) Requests for Production, and five (5) Requests for Admission (together, the "Proposed Discovery Requests"). (*Id.* at PageID#s 107, 120-25.) On April 30, 2025, Defendants filed their Opposition, and on May 12, 2025, Klusmann filed his Reply. (Doc. Nos. 22, 23.)

## II. Scope of Discovery in ERISA Cases

In typical civil litigation, the scope of discovery generally includes all information that is "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The scope of relevance is any matter that bears on or could reasonably lead to other matter that could bear on the claims or defenses of any party in a case." *Dodd v. Hendrickson USA, LLC,*

4

349 F.R.D. 286, 298 (W.D. Ky. 2025) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *accord Bush v. Dickerson*, 2017 WL 3211012 at *4 (6th Cir. May 3, 2017) (same).  This general standard, however, does not apply when a plaintiff brings an ERISA claim because "the district court's review is generally limited to consideration of 'the evidentiary materials contained in the administrative record.'"  *Christoff v. Ohio N. Univ.*, 2024 WL 4363165 at *3 (N.D. Ohio Sept. 30, 2024) (quoting *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006)).  Thus, the default rule in an ERISA case is that discovery of information outside of the administrative record is generally unavailable.  *See Moore*, 458 F.3d at 430; *Likas v. Life Ins. Co. of N. Am.*, 222 Fed. Appx. 481, 485 (6th Cir. 2007) (citation omitted).  Nevertheless, the Court can still look outside the administrative record for evidence "only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part."  *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring).  Such a "procedural challenge" includes alleged "procedural irregularities."  *See Digeronimo v. Unum Life Ins. Co. of Am.*, 2025 WL 2459557 at *3 (N.D. Ohio Aug. 27, 2025) (quoting *Likas*, 222 Fed. Appx. at 486); *Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 Fed. Appx. 292, 304 (6th Cir. 2018) (same).

Here, the parties disagree about whether a plaintiff must make a threshold evidentiary showing to justify discovery in support of alleged procedural challenges.  According to Klusmann, the court in *Orlandi v. Osborne*, 2022 WL 4599252 (N.D. Ohio Sept. 30, 2022) (Helmick, J.) properly interpreted *Johnson v. Conn. Gen. Life Ins. Co.*, 324 Fed. Appx. 459, 467 (6th Cir. 2009) to find that "no threshold of evidence was necessary for alleged issues 'that resulted from that conflict [of interest].'"  (Doc. No. 21 at PageID#s 110-11) (quoting *Orlandi*, 2022 WL 4599252 at *7) (brackets in original).  In their

5

Opposition, Defendants point to *Alekna v. AT&T Serv., Inc.*, 2018 WL 1251767 (N.D. Ohio Mar. 12, 2018) (Lioi, J.), where the court refused to allow discovery into AT&T and Sedgwick— the same Defendants named herein.  (Doc. No. 22 at PageID# 136.)  In his Reply, Klusmann argues that *Alekna* is distinguishable because the plaintiff's proposed requests for production there were limited to "the relationship between AT&T and Sedgwick" but Klusmann "has made no such requests in this case for issues of a conflict of interest."  (Doc. No. 23 at PageID# 149.)  Klusmann also argues that because *Orlandi* is more recent than *Alekna*, the Northern District of Ohio has "change[d] its position in how Discovery is permitted – no longer requiring a threshold showing of evidence."  (Doc. No. 23 at PageID# 149.)  *Alekna*, he contends, is "no longer consistent with the current interpretation of precedent."  (*Id.* at PageID# 150.)

For the reasons below, the Court agrees with Klusmann's premise that a threshold evidentiary showing in support of a plaintiff's procedural challenge is not required as a matter of law, but the Court nevertheless rejects Klusmann's conclusion, i.e., that imposing such a threshold is "no longer consistent with the current interpretation of precedent."  (*Id.*)  The reason is that both *Alekna* (which imposed a threshold evidentiary standard) and *Orlandi* (which did not) reached permissible conclusions within the bounds of their discretion as set forth by applicable Sixth Circuit caselaw in *Wilkins* and *Johnson*.[4]

---

[4] The Court also makes an initial note about Klusmann's mistaken characterization of *Orlandi* as representing a change in the Northern District of Ohio's "position" on "how Discovery is permitted" in an ERISA case.  (*Id.* at PageID# 149.)  It is axiomatic that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  *Camreta v. Greene*, 563 U.S. 692, 709 n.7, (2011) (quoting 18J James W. Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)); *see also Lafleur v. Yardi Sys., Inc.*, 765 F. Supp. 3d 640, 652 (N.D. Ohio 2025) (Barker, J.).  Thus, neither *Alekna* nor *Orlandi*, as district court opinions, constitutes binding authority in the Northern District of Ohio.  Instead, they are to be considered only for their *persuasive* interpretations of binding Sixth Circuit law, and the application of that law to analogous factual scenarios.  *See Peguese v. PNC Bank, N.A.*, 306 F.R.D. 540, 545 (E.D. Mich. 2015) (quoting *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007)).

6

A.    **The Court retains discretion regarding whether to impose a threshold evidentiary showing before permitting discovery in support of procedural challenges.**

The Sixth Circuit first recognized the "procedural challenge" exception in Judge Gilman's concurring opinion in *Wilkins*.  *See* 150 F.3d at 619.[5]  He reasoned that traditional summary judgment procedures do not apply to ERISA claims because "Rule 56 is designed to screen out cases not needing a full factual hearing.  To apply Rule 56 *after* a full factual hearing has already occurred before an ERISA administrator is therefore pointless."  *Wilkins*, 150 F.3d at 619; *see also Annis v. Plumbers, Pipe Fitters & Mech. Equip. Serv. Loc. Union No. 392 Health & Welfare Fund*, 2025 WL 1756892 at *3 (S.D. Ohio June 25, 2025) (quoting *Kramer v. Am. Elec. Power Exec. Severance Plan*, 128 F.4th 739, 752 (6th Cir. 2025)) ("The Sixth Circuit recently reiterated that 'Rule 56 does not apply to the adjudication of ERISA denial-of-benefits claims.'").  On that basis, he concluded that "a district court should employ the following steps in adjudicating an ERISA action:"

> 1.   As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly.  The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record but may not admit or consider any evidence not presented to the administrator.

> 2.   The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a ***procedural challenge*** to the administrator's decision, such as an ***alleged lack of due process*** afforded by the administrator or ***alleged bias*** on its part.  ***This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.***

---

[5] Judge Gilman's concurring opinion is controlling precedent because Judge Ryan joined his concurrence.  *See McCann v. Unum Life Ins. Co. of Am.*, 384 F. Supp. 2d 1162, 1166 (E.D. Tenn. 2003) (citing *Wages v. Sandler O'Neill & Partners, L.P.*, 2002 WL 339221 at *3 n.2 (6th Cir. 2002)); *Bell v. Ameritech Sickness & Accident Disability Benefit Plan*, 399 Fed. Appx. 991, 997 n.4 (6th Cir. 2010) ("Although Judge Gilman's opinion in *Wilkins* was nominally a concurrence, he wrote for the majority on this issue."); *Boersma v. Unum Life Ins. Co. of Am.*, 2020 WL 13443885 at *5 (M.D. Tenn. Sept. 2, 2020) ("Judge Gilman's concurring opinion constituted the opinion of the court regarding the procedures to be used in adjudicating an ERISA denial-of-benefits claim[.]").

*Wilkins*, 150 F.3d at 619 (emphasis added).

In *Johnson*, the Sixth Circuit clarified how district courts are to apply Step 2 of "*Wilkins'* exception."  324 Fed. Appx. at 466-67.  The court acknowledged that in some cases, it had held that "discovery might have been appropriate under the circumstances," but that in others, the court had "affirmed the denial of discovery and explained that a 'mere allegation of bias is not sufficient to permit discovery under *Wilkins*' exception.'"  *Id.* at 466 (quoting *Putney v. Med. Mut. of Ohio*, 111 Fed. Appx. 803, 807 (6th Cir. 2004)) (other citations omitted).  The defendant, the court noted, was incorrect to conclude that Sixth Circuit caselaw "should be interpreted to impose a threshold evidentiary showing of bias as a prerequisite to discovery under *Wilkins*" because "the Supreme Court's admonition in [*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)] discouraging the creation of special procedural or evidentiary rules for evaluating administrator/payor conflicts of interest counsels against it."  *Id.* at 466-67.  Yet, the *Johnson* court further explained:

> The limitation on discovery recognized in *Wilkins* is a result of the determination that matters outside the administrative record are ordinarily not relevant to the court's review of an ERISA benefit decision. **District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins***. Plaintiff offered more than a mere allegation of bias, and the district court did not abuse its discretion by allowing plaintiff to conduct limited discovery concerning the conflict that existed in this case.

*Id.* at 467 (emphasis added by bold print).

In light of *Johnson*, district courts consistently recognize that "the Sixth Circuit has refused to create a specific rule about the threshold evidentiary showing of bias required before discovery will be permitted in ERISA cases."  *Alekna*, 2018 WL 1251767 at *2 (quoting *Corey v. Sedgwick Claims Mgmt. Servs.*, 2015 WL 9206490 at *2 (N.D. Ohio Dec. 17, 2015) (citing *Johnson*, 324 Fed. Appx. at 466)).  As the court also noted in *Neubert v. Life Ins. Co. of N. Am.*, 2013 WL 5595292 (N.D. Ohio

8

Oct. 10, 2013) (Lioi, J.), "'the district court retains discretion to decide when to allow such discovery[,]'" 2013 WL 5595292 at *2 (quoting *Bell v. Ameritech Sickness & Accident Disability Benefit Plan,* 399 Fed. Appx. 991, 998 (6th Cir. 2010)), and thus, "[t]he permitted scope of ERISA bias discovery varies between courts." *Id.* at *4.  In an ERISA case, the limiting principle for discovery is that "[a]ny discovery must be confined to the procedural challenge that warrants the discovery, and evidence outside the record may be considered only insofar as it relates to the procedural challenge." *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495 (S.D. Ohio 2018) (citing *Moore*, 458 F.3d at 430).

Thus, contrary to Klusmann's assertion, the Court cannot conclude that either *Alekna* or *Orlandi* "followed the incorrect threshold standard" because in both cases, the court retained and exercised its discretion to adopt different scopes of discovery.  (Doc. No. 23 at PageID# 150.)

**B.    The Court exercises its discretion to adopt *Alekna*'s threshold evidentiary showing requirement as to the scope of discovery for Klusmann's procedural challenges.**

Although Klusmann is correct that a threshold evidentiary showing is not always required, his reliance on *Orlandi* is still misplaced because *Orlandi* does not address an analogous factual scenario. For the reasons below, the Court agrees with Defendants that *Alekna* is more factually analogous to Klusmann's case, and therefore the Court adopts its requirement for a threshold evidentiary showing as to the appropriate scope of discovery.

In *Orlandi*, the plaintiff (Orlandi) participated in an ERISA-governed plan, the benefits from which were paid by Andeavor LLC.  *See* 2022 WL 4599252 at *5.  But when Orlandi filed her claim as a beneficiary of the plan, the administrator, Osborne, "exercised his 'sole and absolute discretion' as Plan administrator to deny Orlandi's claim to benefits." *Id.* at *3 (citation omitted).  Orlandi alleged

9

that "'Osborne was not an impartial decisionmaker and had a conflict of interest in deciding Orlandi's claim and appeal' because of his employment with" Marathon Petroleum Company ("MPC"), which owned Andeavor LLC. *Id.* "Because of this procedural challenge, Orlandi alerted that she would be requesting discovery." *Id.* (citations omitted). After Orlandi served discovery requests on Osborne, he moved for a protective order. *See id.* at *4. Orlandi opposed the motion for a protective order on the grounds that Osborne's employment with MPC effectively made MPC both the administrator of the plan, and the payor of the benefits, which the court agreed created an "inherent conflict of interest." *Id.* at *4 (quoting *Glenn*, 554 U.S. at 108) ("The Supreme Court has held that an inherent conflict of interest exists when 'the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket.'"). The court acknowledged that it "retain[ed] discretion to decide when to allow such discovery." *Id.* at *5 (citations omitted). But the court expressly noted that it was not imposing a threshold evidentiary showing for the following reason: "I conclude permitting limited discovery is necessary in this case to ***allow me to meaningfully determine the weight to accord the conflict of interest*** in the course of my ultimate review of Osborne's decision." *Id.* at *6 (emphasis added).

Thus, the instant matter is distinguishable from *Orlandi*. Indeed, in his Reply, Klusmann concedes that "[r]egarding a conflict of interest . . . Defendants may not have the typical or 'inherent' conflict of interest between the Defendants," but goes on to assert that as outlined in *Glenn*, "there is still the separate issue of the existence of bias with the medical reviewers, being paid for their services." (Doc. No. 21 at PageID# 150.) The Court concludes that *Orlandi* does not help Klusmann because the "conflict of interest" that caused the Court in *Orlandi* to open the door to discovery was the "inherent conflict of interest" (i.e., the inherent conflict that exists where the administrator of the

plan and the payor of the benefits are the same entity). Here, Klusmann concedes that such a conflict does not exist as AT&T and Sedgwick are different entities. (*Id.*)

As Defendants accurately note, *Alekna* is nearly identical to this case—where there is no "inherent conflict of interest" under *Glenn*—and the Court therefore finds *Alekna*'s reasoning more persuasive. In *Alekna*, the plan administrator (Sedgwick) denied the plaintiff (Alekna) benefits from AT&T Umbrella Benefit Plan No. 1. *See* 2018 WL 1251767 at *1. Alekna moved for discovery "related to a potential conflict of interest and/or bias of the Defendants, and 'whether [her] claim was given a 'full and fair review.'" *Id.* (citation omitted). But just like Klusmann, "Alekna [did] not ground her request for discovery in the inherent conflict—addressed in *Glenn* and its progeny—existing when the evaluator and payor are the same entity. She acknowledges, as she must, that here the decision maker and the payor are two separate companies." *Id.* at *2. Alekna therefore predicated her procedural challenge of "bias" purely on the "fact that Sedgwick is paid for its services" by the Plan, and that therefore, that contract "invites the potential for a bias for Sedgwick to eliminate claims for AT&T." *Id.* The court thus imposed a threshold evidentiary standard because "[t]o allow discovery in such circumstances would require discovery in all ERISA cases, transforming the exception into the rule, and decimating case law underscoring the limited nature of ERISA discovery." *Id.* at *3.

Klusmann makes one unconvincing attempt to distinguish *Alekna*. He argues that Alekna made her discovery requests "solely to obtain production of documentation relating to the relationship between AT&T and Sedgwick" but Klusmann "has made no such requests in this case for issues of a conflict of interest." (Doc. No. 23 at PageID# 149.) Although it is unclear precisely what Klusmann means by "for issues of a conflict of interest," the distinction he attempts to draw does not exist; both

11

he and Alekna intended to use discovery to support their procedural challenge of "bias" under *Wilkins*. *See* 150 F.3d at 619.   First, in no uncertain terms, the court in *Alekna* began by noting Alekna's reliance on alleged "bias" to support her discovery requests.  *See Alekna*, 2018 WL 1251767 at *1 ("According to Alekna, the fact that Sedgwick is paid for its services, alone, 'invites the potential for a **bias** for Sedgwick to eliminate claims for AT&T.'") (emphasis added).   Then, the court explained why it rejected exactly that theory: "Because Alekna had not provided *any* facts showing that she has a colorable procedural or **bias** claim, she is not entitled to discovery in this ERISA case."  *Id.* at *3 (emphasis added).   Klusmann too repeatedly claims that some of his Proposed Discovery Requests focus on establishing "bias."  (*See, e.g.*, Doc. No. 23 at PageID# 146 ["The remaining requests focus on the **bias** held by the medial reviewers used by Defendants in this matter"]; *id.* at PageID# 148 ["Plaintiff's requests fall into the categories of medical reviewer **bias** and a general procedural challenge . . ." and "the discovery requests pertaining to the medical reviewer **bias** is relevant . . ."]) (emphasis added).   Klusmann describes his Proposed Discovery Requests as seeking information regarding Defendants' "conflict of interest/bias[,]" which is also what Alekna sought.  *Compare Alekna*, 2018 WL 1251767 at *1 (seeking discovery "related to a potential conflict of interest and/or bias") *with* Doc. No. 21 at PageID# 112 (supporting Klusmann's Proposed Discovery Requests under a bolded heading titled "DISCOVERY OF A CONFLICT OF INTEREST /  BIAS").   In short, Klusmann seeks precisely what Alekna sought, i.e., discovery to establish bias.

Accordingly, the Court exercises its discretion to adopt the same scope of discovery that the court did in *Alekna* for analyzing Klusmann's Proposed Discovery Requests. Therefore, each of Klusmann's Proposed Discovery Requests must be based on "facts showing that [he] has a colorable procedural or bias claim." *Alekna*, 2018 WL 1251767 at *3; *see also Pearce v. Chrysler Grp., L.L.C.*

12

*Pension Plan*, 615 Fed. Appx. 342, 350 (6th Cir. 2015) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)) ("Where a plaintiff has laid a factual foundation to support a claim for lack of due process or bias, his right to discovery must be balanced against the "'need to prevent fishing expeditions.'"); *see also Likas*, 222 Fed. Appx. at 485 ("Likas failed to provide sufficient evidence of bias—or of any procedural irregularity—to justify prehearing discovery. Likas supports his claim with conjecture, and a mere allegation of bias is insufficient to 'throw open the doors of discovery' in an ERISA case.") (citations omitted).[6]

## III.    Analysis

### A.    Local Rule 37.1 does not apply to Klusmann's Motion.

The Court begins by addressing Defendants' argument that because Klusmann did not file his Motion in accordance with Local Rule 37.1 and the Court's Discovery Order (Doc. No. 19-1), the Court should deny the Motion on that basis alone. (Doc. No. 22 at PageID# 131.) Defendants contend that Klusmann "made no effort to meet and confer with counsel for Defendants prior to filing his Motion for Discovery" and made no certification that he "made a sincere, good faith effort to resolve the dispute" or attached "exhibits or other written correspondence documenting counsel's efforts to resolve the dispute prior to requesting Court assistance." (*Id.*) (quoting Doc. No. 19-1 at PageID# 103.) In his Reply, Klusmann responds that Local Rule 37.1

> applies after discovery requests have been sent to a party, and the opposing side either objects or refuses to supply the requested information. Since the Court has not approved Plaintiff's Motion for Discovery, this claim of non-compliance is premature. If the Court approves discovery, and if Defendants provide objections or refuse to

---

[6] As discussed in Section III.D. below, Klusmann also seeks discovery to support other procedural challenges apart from bias. While *Alekna* only addressed a procedural challenge based on "bias," *Alekna*'s evidentiary threshold applies to procedural challenges generally, not only bias.

comply, <u>then</u> Plaintiff must attempt to resolve the issue before motioning the Court to compel Defendants or to rule on their objections under Rule 37.1.

(Doc. No. 23 at PageID#147) (underlines in original).

Local Rule 37.1, titled "Discovery Disputes," provides as follows:

(a) In the absence of a Judicial Officer establishing an alternative procedure for handling discovery disputes, the following procedure shall apply.

(1) Discovery disputes shall be referred to a Judicial Officer only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes.

(2) The Judicial Officer may attempt to resolve the discovery dispute by telephone conference.

(3) In the event the dispute is not resolved by the telephone conference, the parties shall outline their respective positions by letter and the Judicial Officer shall attempt to resolve the dispute without additional legal memoranda.

(4) If the Judicial Officer still is unable to resolve the dispute, the parties may file their respective memoranda in support of and in opposition to the requested discovery by a date set by the Judicial Officer, who may schedule a hearing on the motion to compel.

(b) No discovery dispute shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off date

N.D. Ohio Loc. R. 37.1.

Defendants' arguments lack merit for two reasons.  First, Local Rule 37.1 is styled as such because it serves as the local analog to Federal Rule of Civil Procedure 37, which is titled "Failure to Make Disclosures or to Cooperate in Discovery; Sanctions[.]" Fed. R. Civ. P. 37.  Rule 37 clearly contemplates that motions thereunder are to be made *after* a party fails to adhere to their discovery obligations under the civil rules.  *See id.*  The two "Specific Motions" the rule authorizes are a motion "To Compel Disclosure" and a motion "To Compel a Discovery Response[,]" which are directly referenced in Local Rule 37.1(b).  *Id.*  It provides:

14

(3) Specific Motions.

(A) *To Compel Disclosure*.  If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

(B) *To Compel a Discovery Response*.  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made ***if***:

(i) a deponent ***fails*** to answer a question asked under Rule 30 or 31;

(ii) a corporation or other entity ***fails*** to make a designation under Rule 30(b)(6) or 31(a)(4);

(iii) a party ***fails*** to answer an interrogatory submitted under Rule 33; or

(iv) a party ***fails*** to produce documents or ***fails*** to respond that inspection will be permitted—or ***fails*** to permit inspection—as requested under Rule 34.

*Id.* (emphasis added).  Thus, Fed. R. Civ. P. 37 assumes that the court already authorized the parties to conduct discovery, one party propounded discovery requests upon the other party, and the latter party failed to adequately respond under Fed. R. Civ. P. 37(a)(3)(B).  *See id.*   In this case, that sequence has not happened yet because the Court has not yet granted Klusmann leave to even seek discovery, but instead, through the CMC Order, set a briefing schedule on his anticipated "motion(s) seeking leave to conduct discovery."  (Doc. No. 19 at PageID# 102.)  Second, even if Local Rule 37.1 *did* apply to his Motion, the "Judicial Officer establish[ed] an alternative procedure" under Local Rule 37.1(a) when the CMC Order set a briefing schedule for "a motion[] seeking leave to conduct discovery," which displaced the ordinary procedural route of filing Position Papers after a dispute has arisen.  (*Id.*)

Accordingly, Klusmann's failures to make the Local Rule 37.1 certification and attach exhibits documenting counsels' good faith efforts to resolve the dispute does not defeat his Motion because his

15

Motion is not a Motion to Compel or a Position Paper under Local Rule 37.1.  Instead, as the first sentence of the Motion indicates, it is a threshold motion "for approval to proceed with discovery" using discovery requests the Court has yet to authorize.  (Doc. No. 21 at PageID# 107.)

### B.  The Court declines to permit discovery into Defendants' alleged bias.

Klusmann sorts his Proposed Discovery Requests into two categories based on whether they aim to show "bias" or other "procedural challenges" under *Wilkins*.[7]  The Court addresses each category in turn.  In his Motion, Klusmann proposes three (3) discovery requests seeking information about Sedgwick's alleged bias, Interrogatory Nos. 5 and 6 and Request for Production. No. 1. (Doc. No. 21 at PageID#s 112-13; Doc. No. 21-1 at PageID# 122-23.)[8]

According to Klusmann, he seeks this information to calculate Sedgwick's and Dr. Plona's denial rate, which bears on the "severity of the conflict of interest/bias under the factors for reviewing the claim."  (Doc. No. 2 at PageID# 112.)  In Defendants' Opposition, they first emphasize that they lack this information, have no right to obtain it, and that even if they did, the denial rate would be irrelevant to determining the validity of Klusmann's own ERISA claim.  (Doc. No. 22 at PageID# 135.)  They also note that like the plaintiff in *Alekna*, Klusmann "has presented nothing beyond 'rank speculation' as to the existence of a conflict of interest and the court should deny his Discovery Requests on that basis alone."  (*Id.* at PageID#s 136-38.)  It is unclear from Klusmann's Reply how he responds to Defendants' argument, but he appears to reiterate his claim that "there is still the

---

[7] He also includes Interrogatory No. 1, which seeks only to identify the individuals who would respond to the Proposed Discovery Requests.  (Doc. No. 21 at PageID# 111 n.1.)  Because the Court ultimately concludes that none of the substantive discovery requests are warranted, the Court additionally declines to permit Klusmann to propound Interrogatory No. 1 as well.

[8] Although Request for Production No. 1 seeks information for the claims under "Interrogatory No. 5.4," Klusmann evidently meant to refer to Interrogatory 5.2 because Interrogatory 5.4 does not exist.  (*Id.* at PageID#s 122-23.)

separate issue of the existence of bias with the medical reviewers, being paid for their services." (Doc. No. 23 at PageID# 150.)

The Court concludes that Klusmann is not entitled to discovery into bias. Like the plaintiff in *Alekna*, as set forth above, he has not made any threshold showing of bias as required by *Wilkins*. His only proffered evidence is that Dr. Plona and Sedgwick are "being paid for their services" but that is simply "rank speculation" of bias "supported only by the fact that Sedgwick does not offer its services free of charge." *Alekna*, 2018 WL 1251767 at *3. "To allow discovery in such circumstances would require discovery in all ERISA cases, transforming the exception into the rule, and decimating case law underscoring the limited nature of ERISA discovery." *Id.*

Accordingly, the Court denies Klusmann's Motion to the extent he seeks leave to propound Interrogatory Nos. 5 and 6 and Request for Production No. 1.

### C. Because the Court declines to permit discovery into alleged bias, the Court need not decide the standard of review for the merits determination.

Next, the parties dispute whether the Court must now determine the standard of review the Court will apply to the ultimate merits determination (i.e., whether Klusmann is entitled to judgment on the administrative record). (Doc. No. 22 at PageID# 133; Doc. No. 23 at PageID# 148 n.1.) In their Opposition, Defendants contend that the standard of review will be arbitrary and capricious because the Plan vests discretion in Sedgwick. (Doc. No. 22 at PageID# 132.) According to Defendants, "the standard of review impacts the scope of discovery and, in some cases, shuts the door completely." (*Id.*) They argue that if the standard of review will be *de novo* (which they argue it will not be), then discovery into bias now becomes irrelevant. (*Id.* at PageID# 133) (collecting cases). In his Reply, Klusmann argues that a decision on the standard of review now is not "appropriate" because discovery into bias is relevant under both standards. (Doc. No. 23 at PageID#s 148-49.)

17

At the merits stage of an ERISA action, the court engages in a "two-part inquiry." *See Hughes v. Prudential Life Ins. Co. of Am.*, 2005 WL 839924 at *4 (W.D. Va. Apr. 12, 2005). First, the court "decide[s] which of ERISA's two standards of review applies, arbitrary and capricious or *de novo*." *Sherry v. Hartford Life & Acc. Ins. Co.*, 314 F. Supp. 2d 714, 721 (N.D. Ohio 2004) (citing *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). Second, after deciding on the appropriate standard of review, "the court must apply the standard to the facts of the case, in order to decide whether the denial of benefits should be upheld." *Hughes*, 2005 WL 839924 at *4.

If the court concludes the arbitrary and capricious standard applies, "[b]ias or conflict of interests ***must be weighed as a factor*** when a Court determines whether a denial was arbitrary and capricious." *Johnson v. Connecticut Gen. Life Ins. Co.*, 2007 WL 2993920 at *7 (N.D. Ohio Oct. 11, 2007), *aff'd*, 324 Fed. Appx. 459 (6th Cir. 2009) (citing *Peruzzi v. Summa Med. Plan* 137 F.3d 431 (6th Cir. 1998)) (emphasis added); *see also McCann v. Unum Life Ins. Co. of Am.*, 384 F. Supp. 2d 1162, 1165 (E.D. Tenn. 2003) (citing *Firestone*, 489 U.S. at 115) ("Bias, conflicts of interest and denial of due process on the part of the plan administrator are relevant factors for the court to consider in deciding whether the decision to deny plaintiff benefits was arbitrary and capricious."). Thus, evidence of the administrator's bias is "relevant" to the court's ultimate merits determination when the standard of review is arbitrary and capricious. *See* Fed. R. Civ. P. 26(b). But such evidence is irrelevant if the standard of review is *de novo*. *See Mulligan v. Provident Life & Acc. Ins. Co.*, 271 F.R.D. 584, 588 n.5 (E.D. Tenn. 2011) (quoting *Price v. Hartford Life & Acc. Ins. Co.*, 746 F. Supp. 2d 860, 866 (E.D. Mich. 2010)) ("If the standard of review is *de novo*, then the significance of the administrator's conflict of interest evaporates."). The reason is that a court has no need to consider the administrator's bias under *de novo* review because the court is conducting its *own* analysis of the

18

ERISA claimant's right to benefits based on the evidence in the administrative record. Thus, the relevance of the administrator's bias (at the discovery stage) turns on the standard of review (at the merits stage).

Therefore, when a plaintiff asks the court to permit discovery into the administrator's bias, the court sometimes finds it necessary to skip ahead to resolve the standard of review for the ultimate merits determination. *See Sim v. Reliance Standard Life Ins. Co.*, 2016 WL 319868 at *1 (S.D. Ohio Jan. 26, 2016) (citing *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 418 (3d Cir. 2011)) ("It is appropriate for the Court to consider the applicable standard of review at this juncture because whether discovery is permitted to explore defendants' alleged bias is irrelevant if the standard of review is *de novo.*"). Rule 26(b) compels this result. Before the court unlocks discovery into the administrator's bias, it must first determine whether such evidence would be "relevant" under Rule 26(b), which requires it to find that the ultimate standard of review will be arbitrary and capricious. *See Price*, 746 F. Supp. 2d at 866 (citing Fed. R. Civ. P. 26(b)).

Here, and for the reasons set forth above, the Court is *not* permitting discovery into Sedgwick's alleged bias, so there is no need to determine which standard of review applies, and the Court declines to do so.

**D.** **The Court declines to permit discovery into Defendants' training of employees on ERISA deadlines and Defendants' alleged "double standard"**

In his Motion, Klusmann argues that Interrogatory Nos. 2, 3 and 4, Request for Production No. 2, and Request for Admission Nos. 1-3 support a procedural challenge because Defendants failed to timely issue a decision on his claim for benefits by July 29, 2024. (Doc. No. 21 at PageID#s 113-14, 121-24.) Klusmann claims this failure is a "*per se*" procedural defect (*Id.* at PageID# 114), and he

19

describes the above Proposed Discovery Requests as his "request[s] [that] focus on the training of Defendant Sedgwick's employees of decision-making deadlines, or [a] lack thereof."  (Doc. No. 23 at PageID# 149.)  According to Klusmann, Defendants' untimeliness affects the standard of review the court will apply at the merits stage, and therefore, it is relevant at the discovery stage.  (Doc. No. 21 at PageID# 121) ("This failure to issue a decision within ninety (90) days is relevant because the failure to abide by ERISA and plan provisions strip [sic] Defendants of their deferential arbitrary and capricious review, and instead, creates a *de novo* review of the matter.").  He contends that "[i]f training had occurred, it is relevant for arguments and for the Court to review for determining the appropriate standard of review."  (Doc. No. 21 at PageID# 115.)

Defendants appear to concede—or at least, do not refute—that "the denial of Plaintiff's claim for benefits was mailed one day after the deadline for transmitting that decision under ERISA's claims handling regulations."  (Doc. No. 22 at PageID#s 132-33.)[9]  But they claim that Klusmann's argument that the untimely decision is a *per se* procedural defect proves too much: if the defect alone *per se* reduces the standard of review from arbitrary and capricious to *de novo*, then discovery into the "frequency of training and similar matters will have no bearing on the Court's decision[,]" which therefore makes his Proposed Discovery Requests into employee training irrelevant.  (*Id.* at PageID#s 139-140.)  Then, they argue that Klusmann, like the plaintiff in *Alekna*, has only "unsubstantiated concerns, coupled with [] unresolved factual questions as to the details of how [his] own claim was processed[.]"  (*Id.* at PageID# 140) (quoting *Alekna*, 2018 WL 1251767 at *3).  In his Reply, Klusmann responds that

---

[9] Defendants also admit in their Answer to the Amended Complaint that "on July 31, 2023 [i.e., 92 days after Klusmann's appeal], AT&T upheld the initial decision that Plaintiff did not meet his burden of providing entitlement to benefits under the Plan.  Defendants deny that Plaintiff exhausted administrative remedies."  (Doc. No. 13 at PageID# 64.)

> Defendants tries [sic] to merge discovery based on a conflict of interest/bias and discovery based upon procedural challenges.  These are separate issues for discovery and *Alekna* does not save them from [Klusmann's] right to proceed.  The facts already show the procedural defect occurred, given Defendants failure to issue a decision within the ninety (90) days from the appeal.  This is not a conflict issue, therefore *Alekna* has no bearing (legally or factually) on those specific requests.

(Doc. No. 23 at PageID#s 149-150.)

As noted in Section II.B above, this Court is applying the same threshold evidentiary standard for the scope of discovery as the court did in *Alekna*.  Thus, to warrant discovery into a procedural challenge, Klusmann must demonstrate "facts showing that [he] has a ***colorable*** procedural . . . claim." *Alekna*, 2018 WL 1251767 at *3 (emphasis added).  Put differently, he must "provide sufficient evidence of . . . [a] procedural irregularity . . . to justify prehearing discovery." *Likas*, 22 Fed. Appx. at 485.  But "even 'where a plaintiff has laid a factual foundation to support a claim for lack of due process or bias, his right to discovery must be balanced against the 'need to prevent fishing expeditions.'" *Digeronimo*, 2025 WL 2459557 at *4 (quoting *Pearce*, 615 Fed. Appx. at 350).

First, Klusmann argues "the facts already show the procedural defect occurred, given Defendants failure to issue a decision within the ninety (90) days from the appeal." (Doc. No. 23 at PageID#s 149-50.)  Defendants disagree, claiming that Klusmann has presented "only unsubstantiated concerns[.]" (Doc. No. 22 at PageID# 140.)  On this issue, the Court agrees with Klusmann.  Here, the Court assumes that the administrative record, as uncontested by the parties, establishes that Klusmann's claim was not timely processed.  (Doc. No. 23 at PageID# 150) (collecting citations to the administrative record).  "The procedural irregularity referred to in Sixth Circuit caselaw is a failure to comply with procedural requirements set forth in the ERISA." *Nichols v. Unum Life Ins. Co. of Am.*, 2005 WL 1669338 at *6 (S.D. Ohio July 18, 2005) (citing *Wilkins,* 150 F.3d at 618).  If true,

21

Klusmann has at least shown a "colorable" "procedural irregularity." *Alekna*, 2008 WL 1251767 at *3; *Likas*, 22 Fed. Appx. at 485.

Second, Klusmann is correct that procedural irregularities can impact the standard of review. *See, e.g.*, *Delauter v. Nissan Supp. Exec. Ret. Plan II*, 2021 WL 2515238 at *8 (M.D. Tenn. June 18, 2021) (quoting *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1251 (D. Utah 2016)) ("Serious procedural irregularities can require the court to apply a *de novo* standard of review where deferential review would otherwise be required. That said, there is not a serious procedural irregularity requiring *de novo* review every time the plan administrator's conclusion is contrary to the result desired by the claimant. Instead, *de novo* review may be appropriate if the benefit-determination process did not substantially comply with ERISA regulations."); *Dougharty v. Metro. Life Ins. Co. of Am.*, 2025 WL 747505 at *5-6 (E.D. Tenn. Mar. 7, 2025) (quoting 29 C.F.R. § 2560.503-1(l)) (applying *de novo* standard of review even though the plan granted "discretionary authority" to the plan administrator because the defendant "fail[ed] to strictly adhere to all the requirements of this section with respect to a claim" by failing to "provide a written response to plaintiff's benefit calculation appeal within the prescribed timeframe."). This Court too has recognized the Sixth Circuit's dictum that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner." *Rossiter v. Life Ins. Co. of N. Am.*, 400 F. Supp. 3d 669, 677 (N.D. Ohio 2019) (Barker, J.) (quoting *Univ. Hosp. v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000)).[10]

---

[10] The Sixth Circuit previously held that an administrator's failure to issue a decision that causes an appeal to be "deemed exhausted[,]" as Klusmann contends happened here, does *not* affect the standard of review. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988) ("[T]he standard of review is no different whether the appeal is actually denied or is deemed denied."). But as the court in *Dougharty* recognized, *Daniel* "analyzed a prior version of [29 C.F.R. § 2560.503-1]. Critically, the provision analyzed in *Daniel* lacked the phrase 'without the exercise of discretion by an appropriate

22

A procedural irregularity can also impact the remedy the Court ultimately imposes.  *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 373 (6th Cir. 2009) ("Remand therefore is appropriate in a variety of circumstances, particularly where the plan administrator's decision suffers from a procedural defect or the administrative record is factually incomplete."); *Laake v. Benefits Comm.*, 68 F.4th 984, 991 (6th Cir. 2023) (holding that where the defendant "provided [the plaintiff] with improper notice when it denied her claim for extended LTD benefits, the district court properly remanded [the plaintiff's] claim to [the administrator] for it to determine[.]").

But Klusmann fails to show how his Proposed Discovery Requests are relevant to his procedural defect or irregularity claim.  Interrogatory Nos. 2, 3 and 4, Request for Production No. 2, and Request for Admission Nos. 1-3 are not relevant even though Klusmann is correct that a defect in the claims administration process can impact the standard of review, *see Delauter*, 2021 WL at *8; *Dougharty*, 2025 WL 747505 at *5-6; *Univ. Hosp.*, 202 F.3d at 846 n.3, because he does not show how an inquiry into the training background of the individual employees involved in processing his LTD denial relates to any procedural challenge he advances to support his ERISA claim.  His conclusory assertion otherwise does not explain why those employees' training program is "relevant for arguments" or affects the "appropriate standard of review," so without more, the Court should not permit discovery into that area of inquiry.  *See Canter*, 328 F.R.D. at 495 (citing *Moore*, 458 F.3d at

---

fiduciary,' which [the Department of] Labor appears to have deliberately added to alter the standard of review."  2025 WL 747505 at *5; *see also Bustetter v. Standard Ins. Co.*, 529 F. Supp. 3d 693, 702 (E.D. Ky. 2021), *aff'd*, 2021 WL 5873159 (6th Cir. Dec. 13, 2021) (citing 29 C.F.R. § 2560.503-1(l)(2)(i)) ("A more recent version of the regulations that came into effect on April 1, 2018 expressly provides for *de novo* review in cases where a plan administrator failed to adhere to the claims processing requirements.").

430) ("Any discovery must be confined to the procedural challenge that warrants the discovery, and evidence outside the record may be considered only insofar as it relates to the procedural challenge.").

Request for Admission Nos. 4 and 5 are likewise irrelevant.  (Doc. No. 21-1 at PageID# 125.)  These, Klusmann asserts, will show the "double standard Defendants will be making" if they argue that their failure to timely process his claim was "*de minimus* [sic]."  (Doc. No. 21 at PageID# 115.)  Klusmann makes no attempt to explain how Defendants' imposition of a "double standard" would bear on his ERISA claim or relate to his procedural challenge.  These Requests are irrelevant because they ask Defendants to admit how they *would* treat a hypothetical claimant who files an untimely appeal, which Klusmann did not do.

Thus, while Klusmann *has* made the threshold evidentiary showing under *Alekna* in that he has a colorable procedural challenge, he has not shown how any of his Proposed Discovery Requests are relevant to that procedural challenge.  Accordingly, the Court denies Klusmann's Motion to the extent he seeks leave to propound Interrogatory Nos. 2, 3 and 4, Request for Production No. 2, and Request for Admission Nos. 1-5.  (Doc. No. 21 at PageID#s 121-24.)

**IV.    Conclusion**

Because the Court finds that none of Klusmann's Proposed Discovery Requests are within the scope of discovery for this ERISA case, Klusmann's Motion is DENIED.  (Doc. No. 21).

**IT IS SO ORDERED.**

Dated: September 10, 2025                           *s/ Pamela A. Barker*
                                                    PAMELA A. BARKER
                                                    UNITED STATES DISTRICT JUDGE